CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

NEAL C. HONG (ILBN 6309265)
Assistant United States Attorney

    60 South Market St., Suite 1200
    San Jose, California 95113
    Telephone: (408) 535-5081
    neal.hong@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA, | ) CASE NO. 22-CR-00344 BLF |
|---|---|
| Plaintiff, | ) THE UNITED STATES' SENTENCING MEMORANDUM |
| v. | ) |
| GREGORY SMITH, | ) |
| Defendant. | ) |

## INTRODUCTION

In accordance with the plea agreement and after considering the factors set forth in 18 U.S.C. § 3553, the United States respectfully recommends that the Court sentence Defendant, Gregory Smith, to 151 months of imprisonment followed by 3 years of supervised release.

## ARGUMENT

**I.    The nature and circumstances of the offense are serious.**

The nature and circumstances of the offense are serious. Defendant distributed methamphetamine, a dangerous and addictive drug. The total quantity that Defendant possessed, 68.449 grams of pure methamphetamine (PSR 21), was not a tremendous amount, nevertheless "methamphetamine is a very serious drug that destroys many lives." *United States v. Arreola-Beltran*, 534 F. App'x 630, 633 (9th Cir. 2013). Even more troubling is the fact Defendant, a 16-time convicted

felon, armed himself "for his own protection against the oppositions, which [Defendant] referred to as the Mexicans." PSR 11 (quotations omitted).

Defendant's decision to arm himself during drug deals increased the dangerousness of his offense. "[N]umerous courts have recognized, guns and drugs are a 'dangerous combination,' and drug-traffickers are "'dangerous and disruptive to society.'" *United States v. Canales*, 702 F.Supp.3d 322, 329 (E.D. Pa. November 20, 2023); *see also Orrego-Goez v. United States*, 656 F. Supp 3d. 1370, 1377 (S.D. Fla. February 16, 2023) ("Guns and drugs 'are a dangerous combination'—as courts across the country have consistently found."); *United States v. Beauchamp*, 23-12-SDD-SDJ, 2025 WL 1194490 at *4 (M.D. La. April 24, 2025) ("Congress has long recognized 'that drugs and guns are a dangerous combination.'").

**II.     Defendant's extensive criminal history and characteristics are very troubling and warrant a significant sentence**

Defendant's long criminal his is extremely troubling. His criminal history spans approximately 36 years. *See* PSR 33-56. At the age of 18, he stole a car (PSR 33, 34) and did so again at the age of 19, receiving his first felony conviction. PSR 35. He then started to commit drug offenses at the age of 20 (PSR 36, 37) and then moved on to theft at the age of 21 (PSR 38). He continued to commit crimes throughout his twenties (obstruction, assault, reckless driving, hit and run, and drug possession). PSR 40-45.

This continued into his thirties. He continued to commit drug offenses (46, 49, 50) and escalated that behavior by arming himself. PSR 48. On August 23, 2004, officers received information that Defendant was carrying a firearm and used it to threaten people in the lower Soledad Street area. *Id*. During his arrest, officers found cocaine base (crack cocaine) and a loaded silver semi-automatic .25 caliber handgun. *Id*. As mentioned above, guns and drugs are a dangerous combination that places the community at risk of harm.

Defendant also showed his disregard for the safety of his fellow citizens by leading officers in a dangerous high-speed chase. PSR 51. On August 27, 2010, officers pulled Defendant over and ordered him out of the vehicle. *Id*. Instead of complying, he took off, initially losing control of the car, spinning out and hitting two curbs. *Id*. He then continued driving at a high rate of speed and went directly

through a red light at an intersection. *Id*. According to the officers, he was travelling at 90 miles per hour. *Id*. Defendant then went through two more red lights and entered a residential neighborhood. PSR 51. The posted speed limit of 25 miles per hour, but he was traveling at 65 miles per hour. *Id*. Defendant continued his dangerous behavior by driving at a high rate of speed and running through more stop signs until finally, he struck a curb immobilizing his vehicle. *Id*. The car hit the curb with such force that it caused his tire to shred. *Id*. Officers then arrested him and discovered he had two active felony warrants. *Id*.

The community is fortunate that Defendant did not strike an innocent bystander or innocent driver by his reckless behavior. But this was not the first time that he used a car to endanger the community. He committed a hit and run in 1997 (PSR 42) and again in 2000 (PSR 45). On February 27, 2000, officers were patrolling on East Market Street, when they conducted a records check on a vehicle that came back as stolen. PSR 45. Officers activated their overhead lights, but Defendant, the driver of the vehicle, did not stop and had to be pursued. *Id*. Defendant continued to East Market Street until the vehicle lost control and crashed into a telephone pole at the intersection of East Market Street and Peach Drive. *Id*. He then jumped out of the vehicle and had to be pursued into an apartment complex. *Id*.

He then entered the private residence of two people and attempted to hide. *Id*. Officers asked one of the residents if anyone had just entered his apartment, to which the resident replied "No," but shook his head yes and pointed towards the inside of the apartment. *Id*. Officers entered the apartment and immediately saw Defendant standing inside of a closet. *Id*. Officers arrested Defendant and located a glass smoking pipe at Defendant's feet. *Id*. Officers also found a loaded syringe, which the residents denied owning. *Id*. This must have been a shocking experience for these innocent people. A stranger barged into their home and decided to use their residence as a hiding place from armed officers. Defendant also left a loaded syringe in their home—again disregarding others.

Defendant's criminal career did not slow down into his forties. He continued to steal cars, commit drug crimes, and drive in a reckless and dangerous manner placing the community in harms way. *See* PSR 52-56. On January 29, 2014, officers followed Smith into a parking lot of a shopping complex because he had a felony warrant. PSR 53. Defendant immediately accelerated and drove over

multiple concrete parking pylons before exiting the parking lot. *Id*.

Officers pursued Defendant until he struck a fire hydrant and a parked vehicle at the intersection of North Main Street and Rochex Avenue. *Id*. Despite causing damage to a fire hydrant and another car, Defendant revved his engine in an attempt to get away, but his vehicle would not move. *Id*. Officers then approached the vehicle and arrested Defendant. *Id*. Officers then saw that there were four other occupants inside of the vehicle. *Id*. Defendant could have seriously injured or killed the passengers and bystanders during his third high-speed chase. This is yet another instance where Defendant had no regard for the wellbeing of other people.

Getting caught three times after dangerously driving in public was not enough to deter him. He reoffended again on September 23, 2014. PSR 54. Officers again attempted to contact Defendant because he had felony warrants and Defendant accelerated his vehicle at a high rate of speed to avoid contact. *Id*. Defendant failed to stop at a stop sign and a red light at an intersection while driving at a high rate of speed. *Id*. Eventually, he ran over a stop sign and crashed into a retaining wall. *Id*. Defendant continued driving for a short distance until his vehicle struck a tree on the sidewalk. *Id*. Undeterred, Defendant reversed the vehicle and quickly put it into drive but crashed into the tree again. *Id*. Defendant then crawled through the driver side window and ran. *Id*. Officers caught him and found heroin, cocaine, and methamphetamine on him. *Id*.

At the age of 48, Defendant expanded his criminal career from possessing drugs to dealing drugs. PSR 56. On October 10, 2019, he was convicted of possession of a controlled substance for sale in Monterey County. *Id*. That conviction did not deter him because he distributed drug again in the instant case. PSR 1-3. Defendant may not be a career offender under the Guidelines, but he is for all intents and purposes a *career offender* and that career does not appear to be ending any time soon. Indeed, he is the highest Criminal History Category at VI and has amassed 29 criminal history points. PSR 58. The Guidelines stop counting points at 13 points. *See* Guidelines Chart. He has more than double that score.

//
//
//

**III.   A significant sentence is warranted because Defendant has not been deterred by prior sentences and there is a serious need to protect the public from further crimes of Defendant**

Courts have given Defendant numerous opportunities to change his ways. He has been given probation at least 11 times (PSR 33, 34, 35, 40, 41, 42, 43, 44, 46, 47, 56) and has violated his probation every time. He was placed on parole and violated parole so often that it is difficult to count the number of times he violated parole. *See* PSR 35, 37, 38, 39, 43, 44, 46, 48, 49, 50. The Government's best estimate, based on the PSR, is 54 parole violations.

The Government is recommending 151 months, which is a significant sentence. Defendant points out that "the longest sentence that [he] has ever received is 48 months in state prison." Def. Memo p. 18. However, over his three-decade-long criminal career, courts have sentenced Defendant to an aggregate total of approximately 1,657 days in jail and 332 months in prison. *See* PSR 33-56. This translates into approximately 32 years in custody. Thirty-two years of total custodial sentences, 11 probation sentences, and 54 parole revocations have yet to deter Defendant. A 151-month sentence is necessary to protect the public because it is highly likely that he will reoffend once released from custody.

Defendant's behavior on pretrial release demonstrates that he cannot refrain from criminal behavior. Defendant was initially detained but ordered released on a $50,000 unsecured bond. PSR 5. According to the PSR, "the defendant complied with all Court ordered conditions of release, and U.S. Pretrial Services [USPS] supervision was terminated on September 20, 2022." USPS supervision was terminated; however, Defendant was still being supervised by a different federal agency during the pendency of his federal case. That supervision had the standard court conditions and a few extra conditions. "On February 7, 2023, the defendant failed to appear for a Status Hearing before the Honorable Susan Van Keulen and a warrant was subsequently issued for his arrest." *Id*.

On March 6, 2023, Marina police officers arrested Defendant for False Identification to Specific Peace Officers; Possess Controlled Substance; Transport/Etc. Controlled Substance; Addict Drive Vehicle transportation of controlled substances. *See* PSR 61. On September 20, 2023, he appeared in Court pursuant to a writ of habeas corpus ad prosequendum and was remanded to custody. PSR 5.

A 151-month sentence would serve as deterrence and protect the public from further crimes of Defendant. Courts have imposed increasingly longer sentences for defendants that have been undeterred by prior sentences. *See United States v. Rosales-Gonzales*, 801 F.3d 1177, 1184-85 (9th Cir. 2015) (affirming a district court's upper-end guidelines sentence based on, *inter alia*, defendant being undeterred by past sentences); *United States v. Schlisser*, 767 F. App'x 69, 72 (2nd Cir. 2019) (unpublished) (rejecting a substantive reasonableness challenge to an 84-month sentence based, in part, on the fact that "the 60-month sentence [defendant] served for his prior crime apparently did not deter him from committing the present offense"); *United States v. Torres*, 274 F. App'x 41, 42 (2nd Cir. 2008) (unpublished) (rejecting reasonableness challenge to a 12-year sentence because, among other things, "after considering the fact that [defendant's] two prior sentences of three-to-six years failed to deter him, the district court concluded that a longer period of incarceration was necessary to achieve the statutory goals of sentencing").

It is likely that if Defendant addresses the Court, he may try to convince the Court that he has finally changed his ways, and this will be the last time that he will be before a judge. It is likely that he will ask for one last chance, but this story was probably told to the 23 other judges and that led to 23 failed promises. *See* PSR 33-56 (approximately 23 sentences). The Court cannot know the future, but if the past is an indicator of the future—then it is highly likely that Defendant will reoffend and place the community in danger once released. A sentence of 151 months will ensure that the community is safe from Defendant for at least another 10 years. It will also provide adequate deterrence once he is released because Defendant will be on notice that there will be serious consequences if he continues to reoffend.

**IV.    Probation's calculation and Defendant's personal and family history**

Probation calculated Defendant's range at 188-235 because it found that a two-level enhancement under USSG §2D1.1(b)(1) applied. PSR 22; PSR Sent. Rec. The plea agreement (Doc. 56) did not contain this enhancement. The plea agreement contemplated a total offense of 29. Combined with a Criminal History Category of VI yields a range of 151-188 months.

The Government stands by the plea agreement and will honor its provisions. Pursuant to paragraph 14 the Government recommends "a sentence within the range associated with the Guidelines

calculation set out in paragraph 7…." Doc. 56.  Although, 188 months is within both calculated ranges, the Government submits that 151 is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S. Code § 3553.

In making this recommendation, the Government did consider Defendant's difficult childhood. Defendant's parents were both addicted to crack cocaine and failed to adequately care for him after the age of 13.  PSR 81.  He was exposed to drugs and violence at an early age.  PSR 81-85.  Defendant also suffers from some physical health problems.  PSR 92-94.

Those factors warrant consideration, but they cannot overcome his long extensive criminal history where he put the community in danger countless times.  They cannot overcome his lack of respect for the law.  And they cannot overcome his refusal to stop committing crimes after receiving thirty-two years of total custodial sentences, 11 probation sentences, and 54 parole revocations.

## CONCLUSION

Accordingly, for the reasons stated above, the United States respectfully recommends that the Court sentence Defendant, Gregory Smith, to 151 months of imprisonment followed by 3 years of supervised release.

DATED: July 15, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s Neal Hong
NEAL C. HONG
Assistant United States Attorney